**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff<br><br>vs.<br><br>OASIS POWER, LLC d/b/a OASIS ENERGY<br><br>        Defendant. | Case No.<br><br>COMPLAINT-CLASS ACTION |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Stewart Abramson ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

3.      Plaintiff alleges that Defendant Oasis Power, LLC d/b/a Oasis Energy ("Oasis Energy") made multiple automated telemarketing calls to Mr. Abramson's telephone number assigned to a cellular service for the purposes of advertising its goods and services, which is prohibited by the TCPA.

4.      Because the calls to the Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

5.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.      Plaintiff Stewart Abramson is a Pennsylvania resident, and a resident of this District.

7.      Defendant Oasis Power, LLC d/b/a Oasis Energy is a Texas limited liability company that is registered to do business in the State of Pennsylvania, including in this District.

8.      Oasis Energy engages in telemarketing into the states it providers residential energy services, which includes New York, New Jersey, Illinois, Maryland, Massachusetts, and Pennsylvania, including into this District.

**Jurisdiction & Venue**

9.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10.     The Defendant regularly engages in business in this District, including making telemarketing calls into this District, as it did with the Plaintiff.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were made to this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District; the Plaintiff's telephone.

**TCPA and Automated Call Background**

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

13.     The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C.

§ 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store

or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.  *Id.* at § 227(a)(1).

15.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the

Federal Communication Commission ("FCC") the responsibility to promulgate regulations

implementing the TCPA's requirements.  *Id.* at § 227(a)(1).

16.     Over the last fifteen years, the FCC has repeatedly recognized that a predictive

dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also

defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

17.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

18.     According to findings by the FCC, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

20.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition,

---

[1] *Id*. at ¶ 131.

[2] *In re* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2008 Order), 23 FCC Rcd. 559 (2008) ("2008 Order"). The 2008 Order and its finding that that a predictive dialer was an ATDS for purposes of the TCPA was not appealed.

the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

21.     Oasis Energy provides retail energy services to consumers.

22.     Oasis Energy uses telemarketing to solicit new clients.

23.     Oasis Energy's telemarketing efforts include the use of automated dialing equipment to send automated calls, including the use of predictive dialers.

24.     Oasis Energy engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on sales they complete, or on an hourly basis, only talk to individuals who pick up the telephone.

25.     On March 13 and 17, 2018, the Plaintiff received an automated telemarketing call on his cellular telephone number (412) 362-XXXX.

26.     The March 13 telemarketing call began with a distinctive pause after the Plaintiff answered and gave his greeting.

27.     The March 17 telemarketing call began with a distinctive click and pause after the Plaintiff answered and gave his greeting.

28.     The dialing technology that causes a distinctive click and/or pause is also known as a predictive dialer, in which lines are dialed using an algorithm to "predict" when a call center operator will be available—which leads to the pause and "click" as the operator takes the call.

29.     These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign

demonstrate that the call was made using an automatic telephone dialing system ("ATDS") as that term is defined in 47 U.S.C. § 227(a)(1).

30.     In order to investigate the identity of the goods or services being offered, which weren't clear from the beginning of the call, the Plaintiff proceeded through the scripted sales pitch.

31.     The Plaintiff was informed that he was being offered Oasis Energy services.

32.     On the March 13th call, the Plaintiff was given a verification number of 472658.

33.     The calls came from the Caller ID Number 330-892-7061.

34.     Other individuals have complained about getting unsolicited calls from that number during the same time frame as the Plaintiff's call:

> Got my call like the others..  All I heard was ' was I the one who paid the electric bill  ....
> 17 Mar 2018
>
> Even though this was a hang up on my answering machine, judging by the other comments, I'm going to say this is just another illegal telemarketing call trying to get you to change electric providers.
> 18 Mar 2018
>
> Got my call like the others at 08:15pm She asked if I was I the one who paid the electric bill and didvi receive peeve [sic] advertisement on 20% lower rates?
> 5 Apr 2018

*See* https://800notes.com/Phone.aspx/1-330-892-7061 (Last Visited April 10, 2018).

35.     Unfortunately, other individuals have also complained about Oasis telemarketing, as one consumer recounted his experience:

> "Hello?"
> "Hello sir, this is Will from Oasis Energy."
> "..."
> "Hello?"
> "Hello ..."
> "Hello, this is Will from Oasis Energy calling about your BGE bill. Are you the account holder?"

"Who wants to know?"
"I'm Will from Oasis Energy."
"Never heard of it. Did you ever hear of the Do Not Call Registry?"
"Goodbye sir."

*See* https://www.ripoffreport.com/reports/oasis-energy/houston-texas-77042/oasis-energy-misrepresentation-of-services-and-ethically-defiecient-business-practices-ho-943676 (Last Visited April 10, 2018).

36.     Prior to these unsolicited calls, the Plaintiff has never done any business with Oasis Energy.

37.     Oasis Energy did not have the Plaintiff's prior express written consent to make these calls.

38.     In fact, prior to the filing of this lawsuit, the Plaintiff wrote to Oasis asking if they had any consent to contact him.

39.     Oasis did not provide any evidence of consent to make the calls.

40.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

41.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Class Action Statement Pursuant to LCvR 23

42.     As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Rule 23(A) of the Local Rules for the Western District of Pennsylvania, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

43.     The class of persons Plaintiff proposes to represent include:

All persons within the United States to whom: (a) Oasis Energy and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Oasis Energy's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

44.     Excluded from the Class are the Defendant, any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

45.     The proposed Class members are identifiable through phone records and phone number databases, which are with the Defendant or their agents.

46.     The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Class members number in the thousands, at least. Individual joinder of these persons is impracticable.

47.     Plaintiff is a member of the Class.

48.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.     Whether the Defendant used an ATDS to make the calls at issue;

b.     Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

c.     Whether the Defendant's violations of the TCPA were negligent, willful, or knowing; and

d.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

49.     Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and

class members all received telephone calls through the same or similar dialing system and pre-recorded message on a cellular telephone line.

50.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

51.     In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

52.     The actions of the Defendant are generally applicable to the Class and to Plaintiff.

53.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

54.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

55.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA, 47 U.S.C. § 227(b)**

56.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS.

58.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

59.     If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

60.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendant and/or its affiliates, agents, and/or other related

entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiff and the Class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

                                        Plaintiff,
                                        By Counsel,


Dated: April 12, 2018                   By:   /s/ Clayton S. Morrow
                                        Clayton S. Morrow
                                        Email: csm@ConsumerLaw365.com
                                        Morrow & Artim, PC
                                        304 Ross Street, 7th Floor
                                        Pittsburgh, PA 15219
                                        Telephone: (412) 281-1250
                                        Direct Phone: (412) 209-0656

                                        Anthony Paronich
                                        Email:  anthony@broderick-law.com
                                        BRODERICK & PARONICH, P.C.
                                        99 High St., Suite 304
                                        Boston, Massachusetts  02110
                                        Telephone:  (508) 221-1510
                                        *Subject to Pro Hac Vice*

                                        Matthew P. McCue
                                        The Law Office of Matthew P. McCue
                                        1 South Ave., Third Floor
                                        Natick, MA 01760
                                        Phone: (508) 655-1415
                                        mmccue@massattorneys.net
                                        *Subject to Pro Hac Vice*