IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OASIS POWER LLC, d/b/a OASIS ENERGY,<br><br>    Defendant. | Civil Action No. 2:18-00479 |

## OASIS POWER LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Wendy West Feinstein (Pa. ID 86698)
Thomas E. Sanchez (Pa. ID 311199)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
(412) 560-3300 (telephone)
(412) 560-7001 (facsimile)
wendy.feinstein@morganlewis.com
thomas.sanchez@morganlewis.com

I.      INTRODUCTION

Plaintiff Stewart Abramson ("Abramson") is a professional plaintiff who is in the business of bringing Telephone Consumer Protection Act ("TCPA") lawsuits, having filed no fewer than twenty-eight such lawsuits in recent years across the country.  His purpose is clear— he intentionally encourages calls to his cellular telephone number so that he can file lawsuits and claim statutory damages under the TCPA.  Indeed, court orders awarding Abramson default judgments in other TCPA cases reflect awards of tens of thousands of dollars.  *See, e.g.*, *Abramson v. Travel Serv. Network, Inc.*, 2011 WL 7657303 (Pa. Com. Pl. 2011) (order awarding $24,200 default judgment in TCPA case).

Congress, however, never intended that the TCPA be used as an enterprising plaintiff's litigation goldmine.  The TCPA is instead meant to protect consumers from actual telemarketing abuses.  S. Rep. No. 102-178, at 1–2 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1969.  Thanks in part to litigious serial plaintiffs like Abramson, the current Chairman of the Federal Communications Commission has lamented that the TCPA "has become the poster child for lawsuit abuse,"[1] generating a "staggering amount of litigation" and exploding far beyond its original scope to instead become a "destructive force that threatens companies with annihilation for technical violations that cause no actual injury or harm to any consumer."[2]

Plaintiffs like Abramson should not be allowed to use the TCPA as a lawsuit-generating weapon to turn a profit, in contrast to the purpose for which the TCPA was enacted.  The Court should dismiss Abramson's complaint for two reasons:

---

[1] Dissenting Statement of Commissioner Ajit Pai, Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protective Act of 1991, CG Docket No. 02-278, WC Docket No. 07-135, FCC-15-72, 8073 (issued on July 10, 2015).

[2] *The Juggernaut of TCPA Litigation*, U.S. Chamber Institute for Legal Reform, at 1 (Oct. 2013), *available at* http://www.instituteforlegalreform.com/uploads/sites/1/TheJuggernautofTCPALit_WEB.PDF, last visited Nov. 11, 2017.

*First*, Abramson has no Article III standing to bring his claim.  An alleged telemarketing call to his cellular telephone line, *returning a call he made* to Oasis Power LLC ("Oasis Energy"), does not constitute the kind of "nuisance" or "invasion of privacy" that the TCPA was meant to remedy.  Abramson therefore has not suffered the kind of concrete, particularized harm required to confer constitutional standing to sue.  In other words, Abramson has suffered no injury-in-fact, and the Court should dismiss his Complaint for lack of standing under Federal Rule of Civil Procedure ("Rule") 12(b)(1).

*Second*, even if Abramson has suffered harm, which Oasis Energy denies, and this Court has subject matter jurisdiction under Article III, the recording of the alleged March 13, 2018 call to Abramson—incorporated by reference into his Complaint—makes clear that he cannot plausibly state a claim under the TCPA because Oasis Energy did not use an automatic telephone dialing system to contact Abramson, and Abramson gave consent to receive calls from Oasis Energy, and therefore dismissal is also warranted under Rule 12(b)(6).

## II. BACKGROUND

### A. Abramson's Allegations

Abramson alleges that on March 13 and 17, 2018, he received calls from Oasis Energy on his cellular telephone.  Complaint ("Compl.") ¶ 25.  He claims that "in order to investigate the identity of the goods or services being offered, which weren't clear from the beginning of the call, the Plaintiff proceeded through the scripted sales pitch."  *Id.* ¶ 30.  According to Abramson, he was told that he was being offered Oasis Energy's services.  *Id.* ¶ 31.  Plaintiff claims that he had done no prior business with Oasis Energy prior to the March 13 call and that Oasis Energy did not have his consent to make the alleged calls.  *Id.* ¶ 37.

Abramson claims that Oasis Energy's conduct violates the TCPA, and he purports to represent a class of:

> All persons within the United States to whom (a) Oasis Energy and/or a third party acting on their behalf made one or more non-emergency telephone calls; (b) that could have promoted Oasis Energy's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

*Id.* ¶ 43.  Abramson seeks injunctive relief and statutory damages on behalf of himself and members of the class. *Id.* at 10-11.

### B.  The Alleged Calls Were Manually Dialed

To the extent Abramson's allegations are true, which Oasis Energy denies, the March 13, 2018 call referenced in the Complaint was dialed manually in response to a call from Abramson to Oasis Energy's vendor, Pro-Tel.  Declaration of Hector Laya, attached hereto as "Exhibit A" (hereinafter "Laya Decl."), ¶ 6.[3]  Abramson had previously called Pro-Tel to confirm an energy efficiency survey appointment for the following day.  *Id.*  During the March 13, 2018 call to Abramson, the Pro-Tel agent asked if Abramson would agree to be transferred to an Oasis Energy agent to hear about lowering his electricity bill costs and Abramson agreed to be transferred.  *Id.* ¶ 8.  Once transferred, Abramson enrolled in electricity services with Oasis Energy.  *Id.* ¶ 9.  An Oasis Energy agent then connected Abramson with a third-party verification agent to complete the required third-party verification process, and when asked if he consented to future communications from Oasis Energy, Abramson replied, "yes."  *Id.* ¶¶ 12-13.  Oasis Energy has no record of the purported second call referenced in the Complaint, allegedly placed

---

[3] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Rando v. Edible Arrangements Int'l, LLC*, No. CV 17-701(JBS/AMD), 2018 WL 1523858, at *2 (D.N.J. Mar. 28, 2018) (considering declaration explaining context of text messages where plaintiff had alleged TCPA violations based on marketing text messages, and granting defendant's motion to dismiss).

3

on March 17, 2018. However, any follow-up call intended to confirm Abramson's purchase and transfer from his prior electricity provider would have been manually dialed and would not have been made with an automatic telephone dialing system. *Id.* ¶ 14. Oasis Energy records reflect that Abramson promptly terminated his electrical service, effective March 22, 2018. *Id.* ¶ 16.

### III.  STANDARD OF REVIEW

#### A.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) authorizes dismissal of a complaint where the plaintiff lacks constitutional standing to sue. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360 (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Where, as here, the moving party advances a "factual attack," the Court may look beyond the pleadings to ascertain the facts and determine whether they do not support the assertion of jurisdiction. *Id.* at 358. "In a factual attack, the plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the plaintiff's allegations." *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

#### B.  Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196; *see also In re Ashanti Goldfields Sec. Litig.*, 184 F. Supp. 2d 247, 263 (E.D.N.Y. 2002) (considering transcript of conference call on motion to dismiss where complaint referenced call and arguments of both parties relied on content of call).

IV.   ARGUMENT

    A.   **Abramson Lacks Constitutional Standing Because He Has Suffered No Concrete Injury**

Standing is a crucial prerequisite to any federal lawsuit and requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing each of these three elements.  *Spokeo*, 136 S. Ct. at 1547.  At the pleading stage, for individual claims and class actions alike, the plaintiff must allege facts demonstrating he has standing to sue.  *Id.*  Merely invoking a federal statute is insufficient, on its own, to confer standing.  *Id.* at 1549; *see also Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.")

An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citation and alteration omitted).  To establish injury at the pleading stage, the plaintiff must allege facts demonstrating that "he or she suffered 'an invasion of a legally

5

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

"Article III of the Constitution imposes its own standing requirements, and only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a statutory violation." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015). "Someone with a generalized interest in punishing telemarketers, for example, *would not qualify on that basis alone*." *Id.* (emphasis added). Repeatedly soliciting calls in an effort to manufacture TCPA claims across the country simply does "not adversely affect the privacy rights that [the TCPA] is intended to protect." *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016); *see also* Dissenting Statement of Commissioner Ajit Pai, Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protective Act of 1991, CG Docket No. 02-278, WC Docket No. 07-135, FCC-15-72, 8073 (issued on July 10, 2015) (expressing concern that legal loopholes in the TCPA will make "abuse of the TCPA much, much easier [and] the primary beneficiaries will be trial lawyers, not the American public.").

It is clear that the alleged "calls did not constitute the nuisance, invasion of privacy, cost, and inconvenience from which Congress intended to protect customers," *Stoops*, 197 F. Supp. 3d at 800; instead, the calls represent yet another attempt by Abramson to profit off of the TCPA and punish telemarketers. Indeed, Abramson has profited greatly from this vexatious behavior.[4] Apart from this case, Abramson has instituted no fewer than twenty-eight similar lawsuits. *See* List of Cases filed by Abramson, attached hereto as "Exhibit B." Moreover, Abramson's true intention in this case is apparent from his prompt cancellation of service, effective just nine days

---

[4] *See, e.g.*, *Abramson v. Travel Service Network, Inc.*, 2011 WL 7657303 (Pa. Com. Pl. 2011) (order awarding $24,200 default judgment in TCPA case); *Abramson v. Fast to Market Corp.*, 2011 WL 2518408 (Pa. Com. Pl. 2011) (order awarding $6,000 default judgment in TCPA case); *Stewart v. Robert*, 2010 WL 6813855 (Pa. Com. Pl. 2010) (order awarding $13,500 default judgment in TCPA case).

6

after enrolling.  *See* Laya Decl. ¶ 16.  In other words, although he likely had no interest in actually buying electricity from Oasis Energy, he deceptively played along with Oasis Energy and signed up as a customer for the purpose of identifying a defendant and engineering this lawsuit.  Given these cases, Abramson simply has not alleged the particularized actual injury needed for standing under Article III.  *See Leyse*, 804 F.3d at 323; *Stoops*, 197 F. Supp. 3d at 800–01 (holding that plaintiff who brought TCPA claims to generate profit lacked standing because she suffered no actual injury-in-fact).[5]  Because Abramson cannot establish that he suffered an injury-in-fact, he lacks constitutional standing to bring his suit, and the Court should dismiss his claim under Rule 12(b)(1).

> **B.  Abramson Fails to State a Claim Because He Has Not Plausibly Alleged that Oasis Energy Used an Automatic Telephone Dialing System**

Even if Abramson has established Article III standing sufficient for this Court's subject matter jurisdiction, his claim would fail because he has not alleged a violation of the TCPA.  It is a violation of the TCPA to make a call, other than a call made for emergency purposes or with prior express consent of the called party, using "any automatic telephone dialing system or an artificial or prerecorded voice," to a "cellular telephone service," or "residential telephone line" unless the call is "made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B).  The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be

---

[5] Another court in this District denied a motion to dismiss a complaint brought by Abramson, briefly noting that Abramson's history of filing TCPA complaints did not negate his alleged injury in that case.  *See Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at *3 (W.D. Pa. Oct. 24, 2016).  However, as explained above, the circumstances here are distinguishable:  among other things, Abramson purposely engaged with Oasis Energy, only to terminate Oasis Energy's services several days later, with the clear aim of encouraging calls and generating litigation.  *See* Laya Decl. ¶¶ 6-13, 16.

called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1)(A)-(B).

Courts routinely dismiss TCPA actions where a plaintiff does not plausibly allege that the defendant used an ATDS.  *See, e.g.*, *Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016) (dismissing TCPA claim for failure to plausibly allege that defendant used an ATDS); *Douek v. Bank of Am. Corp.*, No. CV 17-2313, 2017 WL 3835700, at *3 (D.N.J. Sept. 1, 2017) ("The Court need not take Plaintiff's conclusory assertion that Defendant used autodialing as true"); *see also Priester v. eDegreeAdvisor, LLC*, No. 5:15-CV-04218-EJD, 2017 WL 4237008, at *3 (N.D. Cal. Sept. 25, 2017) ("In sum, the court finds the FAC fails to plausibly allege Defendant's use of an ATDS. Because the cause of action fails on an essential element of a claim under the TCPA, the FAC must therefore be dismissed."); *Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 12806476, at *2 (C.D. Cal. May 8, 2015) (dismissing TCPA claim based on speculative allegation that defendant used an ATDS).

Here, the Declaration of Hector Laya makes clear that no ATDS was used to call Abramson.  The call to Abramson was dialed manually and was not random; instead, the vendor specifically called him *to return a call that Abramson had made* to Oasis Energy's vendor to confirm an energy survey appointment scheduled for the next day.  Laya Decl. ¶ 6.  The call was not random or sequential because it was made specifically to Abramson in response to Abramson's call.  *Id.* ¶ 7.  Abramson's TCPA claim should be dismissed on this ground.  *See Despot*, 2016 WL 4593756, at *5 ("[T]he calls were not random or sequential because they were made to Plaintiff."); *see also Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) (dismissing TCPA complaint with prejudice because "the calls were not random" and instead were directed at the plaintiff); *Daniels v. ComUnity Lending, Inc.*, No. 13-CV-488,

8

2015 WL 541299, at *7-8 (S.D. Cal. Feb. 9, 2015) (dismissing TCPA claim with prejudice and stating that the "alleged calls to Plaintiffs do not appear to have been 'random,' 47 U.S.C. § 227(a)(1); instead, the calls are alleged to be directed specifically toward Plaintiffs").

Moreover, Oasis Energy has no record of the purported second call referenced in the Complaint, and Abramson provides very little information about it. Even if a second call were made to Abramson, which Oasis Energy denies, it would not have violated the TCPA because Abramson gave explicit and voluntary consent on the March 13 call to receive future communication from Oasis Energy on his cellular telephone. *See* Laya Decl. ¶ 13; *see also Daubert v. NRA Grp., LLC*, 861 F.3d 382, 390 (3d Cir. 2017) (The TCPA "doesn't treat the term [consent] differently from its common law usage under which the basic premise of consent is that it's 'given voluntarily.'"); *Jordan v. Sterling Jewelers, Inc.*, No. 1:15-CV-1417, 2016 WL 7168413, at *4 (M.D. Pa. Nov. 15, 2016), *report and recommendation adopted*, No. 1:15-CV-1417, 2016 WL 7117471 (M.D. Pa. Dec. 7, 2016) ("[T]he vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party."). Additionally, any follow-up call to confirm Abramson's purchase and transfer from his prior electricity provider would have been manually dialed rather than dialed using an ATDS, and it therefore would not have been a random call. *See id.* ¶ 14. For these reasons, Abramson has not plausibly alleged that the calls referenced in the Complaint were made without his consent or made using an ATDS, and dismissal of the Complaint pursuant to Rule 12(b)(6) is warranted.

V. **CONCLUSION**

For the reasons stated above, the Court should dismiss Abramson's Complaint with prejudice.

9

Dated:  May 29, 2018						Respectfully submitted,

									MORGAN, LEWIS & BOCKIUS LLP

									/s/Thomas E. Sanchez
									Wendy West Feinstein (Pa. ID 86698)
									Thomas E. Sanchez (Pa. ID 311199)
									One Oxford Centre, 32nd Floor
									Pittsburgh, PA 15219-6401
									412.560.3300 (telephone)
									412.560.7001 (facsimile)
									wendy.feinstein@morganlewis.com
									thomas.sanchez@morganlewis.com

									*Attorneys for Defendant Oasis Power LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of May, 2018, a true and correct copy of the foregoing Memorandum of Law in Support of Oasis Power, LLC's Motion to Dismiss and all accompanying exhibits was filed through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Thomas E. Sanchez
Thomas E. Sanchez

11