IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART ABRAMSON, individually, and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | District Judge Cathy Bissoon<br>Magistrate Judge Lisa Pupo Lenihan |
| vs. | ) ) ) | Case No. 2:18-cv-00479 |
| OASIS POWER LLC, d/b/a OASIS ENERGY and PROTEL MARKETING, INC., | ) ) ) ) | ECF No. 23 |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Oasis Power LLC d/b/a Oasis Energy ("Oasis") (ECF No. 23) be denied.

**II.    REPORT**

Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Oasis Power LLC d/b/a Oasis Energy ("Oasis"). (ECF No. 23.)  In the motion, Oasis seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(1) dismissing the First Amended Complaint filed against it by Plaintiff Stewart Abramson ("Abramson") for lack of standing or, alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.   For the reasons set forth below, the Court will deny Oasis's motion.

1

## A. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Abramson, on behalf of himself and a class of all persons and entities similarly situated, brought this action against Oasis under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, alleging that Oasis made multiple automated telemarketing calls to the telephone numbers of Abramson and the putative class members for the purposes of advertising its goods and services. (First Am. Compl. ¶¶ 3, 74, 87-91, ECF No. 18.)

Abramson is a Pennsylvania resident, and Oasis is a Texas limited liability company registered to do business in Pennsylvania. *Id.* ¶¶ 6-7. Oasis engages in telemarketing into the states where it provides residential energy services, including New York, New Jersey, Illinois, Maryland, Massachusetts, and Pennsylvania. *Id.* ¶ 8. Co-Defendant Pro-Tel Marketing, Inc. ("Pro-Tel") is a Florida corporation that makes telemarketing calls at Oasis's direction. *Id.* ¶ 9.

According to the First Amended Complaint, Oasis provides retail energy services to consumers and uses telemarketing to solicit new clients. *Id.* ¶¶ 22-23. Abramson contends that, instead of physically dialing the telemarketing calls itself, Oasis outsources that task to vendors, including Pro-Tel. *Id.* ¶ 24. Oasis's telemarketing efforts include the use of automated dialing equipment to send automated calls, including the use of predictive dialers. *Id.* ¶ 25. Abramson alleges that on March 13, 2018 and on March 17, 2018, he received automated telemarketing calls on his cellular telephone number. *Id.* ¶ 27. Both of these calls came from the caller ID number 330-892-7061, a non-working number. *Id.* ¶¶ 28-29. The March 13 call began with a distinctive pause after Abramson answered and gave his greeting. *Id.* ¶ 31. The calling party did not identify their company. *Id.* ¶ 33. In a prior submission to this Court, Oasis claimed that

Pro-Tel physically dialed the March 13 call.[1]  *Id.* ¶ 32.  In that same submission, Oasis claimed that Abramson had previously called Pro-Tel about an "energy survey."  *Id.* ¶ 34.  Abramson denies that he called Oasis or Pro-Tel regarding any energy survey at any time.[2]  *Id.* ¶ 35.  Abramson also states that he did not consent to receive calls from Oasis, Pro-Tel, or anyone else calling on behalf of Oasis prior to the March 13 call.  *Id.* ¶ 36.  In order to investigate the identity of the goods or services being offered, Abramson proceeded through the scripted sales pitch during the March 13 call.  *Id.* ¶ 37.  Abramson was informed that he was being offered Oasis Energy services.  *Id.* ¶ 38.  During the March 13 call, Abramson did not consent to receive subsequent automated solicitation calls from Oasis, yet he did receive such calls.  *Id.* ¶¶ 40-41.  The March 17 telemarketing call also began with a distinctive click and pause after Abramson answered and gave his greeting.  *Id.* ¶ 42.

Abramson asserts that the dialing technology that causes a distinctive click and/or pause is known as a "predictive dialer," in which lines are dialed using an algorithm to predict when a call center operator will be available – leading to the "pause and click" as the operator takes the call.  *Id.* ¶ 43.  Abramson contends that the use of a predictive dialer, the geographic distance between himself and defendants, and the fact that the call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS") as defined in the TCPA.  *Id.* ¶ 44.

Abramson avers that, prior to the unsolicited calls, he had never done business with Oasis

---

[1] The submission to which the First Amended Complaint refers is Oasis's Brief in Support of its Motion to Dismiss Abramson's original Complaint.  (ECF No. 17 & attached Declaration.)   Abramson responded to the Motion to Dismiss by filing the instant First Amended Class Action Complaint adding Pro-Tel as a Defendant.   (ECF No. 18.)

[2] Abramson contends that Pro-Tel called him at Oasis's instruction and direction in an effort to originate a new customer for Oasis.  (First Am. Compl. ¶ 63.)

and that Oasis did not have his prior express written consent to make the calls. *Id.*¶¶ 47-48. He states that he and other call recipients were harmed by these calls, *i.e.*, they were temporarily deprived of legitimate use of their phones because the phone lines were tied up; they were charged for the calls; their privacy was improperly invaded; and the calls were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Abramson and the class. *Id.*¶¶ 51-52.

In April 2018, Abramson filed a complaint on behalf of himself and a putative class against Oasis in this Court. (ECF No. 1.) In the original complaint, Abramson alleged that Oasis violated the TCPA by making non-emergency calls to the cellular telephone numbers of Abramson and the members of the putative class using an ATDS. *Id.* ¶ 57. Oasis filed a motion to dismiss for lack of standing and failure to state a claim, arguing, among other things, that the March 13, 2018 call referenced in the Complaint was dialed manually in response to a call from Abramson to Oasis's vendor Pro-Tel. (ECF Nos. 16-17.)

In response, Abramson filed an amended complaint, adding Pro-Tel as a defendant. (ECF No. 18.) On June 18, 2018, Oasis again moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. (ECF No. 23.) Abramson filed a brief in opposition on June 21, 2018. (ECF No. 26.) Oasis filed a reply brief on July 2, 2018. (ECF No. 27.)

The Motion to Dismiss and related issues are now fully briefed and ripe for disposition.

## B. STANDARD OF REVIEW

### 1. Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d

Cir.2007) (citations omitted). The standard applied by the Court in reviewing a 12(b)(1) motion challenging standing depends on whether the motion presents a "facial" or a "factual" attack on the issue presented. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir.2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

A facial attack, which is usually made before an answer is filed or the factual allegations of the complaint are otherwise contested, asserts that the claim, on its face, is insufficient to invoke the subject matter jurisdiction of the court. *Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 357–58 (3d Cir.2014). Thus, "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party." *Id.* (citing *In re Schering Plough Corp.,* 678 F.3d at 243).

On the other hand, a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis v. Wells Fargo, U.S.*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Aichele*, 757 F.3d at 358) (alteration in original). Thus, whereas "a facial attack contests the sufficiency of the pleadings, . . . a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Aichele*, 757 F.3d at 358 (quoting *In re Schering Plough Corp.,* 678 F.3d at 243; *CNA v. United States,* 535 F.3d 132, 139 (3d Cir.2008)) (internal quotation marks omitted) (alterations in original). With a factual challenge, the plaintiff has the burden of proving that jurisdiction exists. *Davis*, 824 F.3d at 346. "[T]he Court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear

the case[,]'" and "'no presumptive truthfulness attaches to [the] plaintiff's allegations.'"  *Id.* (quoting *Mortensen*, 549 F.2d at 891); *see also Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 633–34 (W.D. Pa. 2014) (noting the district court may look beyond the pleadings to ascertain the facts).  Here, Oasis has submitted a signed declaration and attached documentation to its supporting brief and is making a factual 12(b)(1) challenge based on evidence beyond the Amended Complaint and the documents attached thereto.  *See* ECF No. 24 at 4-5 & attached Declaration of Hector Laya in Support of Motion to Dismiss ("Laya Decl."); *see also Davis*, 824 F.3d at 346.

### 2. **Fed. R. Civ. P. 12(b)(6)**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the

necessary element." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

## C. ANALYSIS

### 1. TCPA

The TCPA "was intended to combat, among other things, the proliferation of automated telemarketing calls (known as "robocalls") to private residences, which Congress viewed as a nuisance and an invasion of privacy." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S. Ct. 740, 745 (2012)). To this end, the TCPA provides consumers with a private right of action for certain prohibited uses of automated telephone equipment. 47 U.S.C. § 227(b)(3). In relevant part, the TCPA makes it unlawful for any person within the United States:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ...
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A).

### 2. Standing

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing doctrine "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III standing requires the party invoking jurisdiction to meet three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely . . . that the injury will be redressed by a favorable decision.

*Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 64 (3d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560-61) (alterations in original); *Spokeo*, 136 S. Ct. at 1547.

The Court in *Spokeo* emphasized that "the requirements of particularization and concreteness require[] separate analyses and that neither requirement alone [i]s sufficient." *Id.; see also id.* at 1548 ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* For an injury to be "concrete," it must "actually exist." *Id.* Although an alleged statutory violation is not always sufficient to demonstrate a concrete injury, *id.* at 1549, the *Spokeo* Court confirmed that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements . . . [it] may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (internal quotations omitted); *see also id.* ("'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). "When one sues under a statute alleging 'the very injury [the statute] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Susinno v. Work Out World Inc.,* 862 F.3d 346, 351 (3d Cir. 2017) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639-40 (3d Cir. 2017)).

8

It is the district court's duty to determine in the first instance whether a plaintiff has Article III standing, including whether the elements of concreteness and particularization are satisfied. *See, e.g, Bock*, 658 F. App'x at 65; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing. *Spokeo*, 136 S. Ct. at 1547.

As set forth above, Oasis has brought a factual 12(b)(1) challenge attacking Abramson's standing to bring this case. Specifically, Oasis contends that Abramson lacks constitutional standing because he has not suffered a concrete and particularized injury and, therefore, cannot establish an "injury in fact." (ECF No. 24, at 5-7.) Recently, the Court of Appeals for the Third Circuit addressed the "injury in fact" standing requirement in TCPA cases in *Susinno v. Work Out World, Inc.*, 862 F.3d 346. In *Susinno*, the plaintiff alleged a TCPA violation after receiving a single, unsolicited call on her cell phone from a fitness company that left a prerecorded promotional message on her voicemail when she did not answer. *Id.* at 348. The Court of Appeals found that the injuries Susinno alleged were concrete because (1) the complaint pleaded an injury (nuisance and invasion of privacy from a prerecorded telephone call) that the TCPA directly aimed to prevent; and (2) the injury bore a close relationship to a harm traditionally providing a basis for a lawsuit in English or American court. *Id.* at 351-52. With respect to the latter inquiry, the Court of Appeals focused on traditional claims for intrusion on seclusion, explaining:

> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second

> Restatement suggests that because "two or three" calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten [v. Vertical Fitness Grp., LLC]*, 847 F.3d [1037,] 1043 [(9th Cir. 2017)], it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

*Id.*; *see also Van Patten*, 847 F.3d at 1043 (noting that TCPA claims closely relate to traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts").

After careful review, this Court agrees with Abramson that his claims assert a concrete injury for the purposes of constitutional standing for the same reasons set forth in *Susinno*. First, the Amended Complaint pleads an injury (nuisance and invasion of privacy from an automated telephone call) that the TCPA directly aims to prevent. *See* 47 U.S.C. § 227(b)(1)(A). Second, as in *Susinno*, Abramson's TCPA cause of action implicates interests akin to those associated with the traditional causes of action for invasion of privacy, intrusion upon seclusion, and nuisance. In addition to being "concrete," Abramson's alleged injuries are "particularized" because he does not assert a general grievance, but, rather, claims injuries arising to him personally as a result of phone calls placed directly to him. *See Spokeo*, 136 S. Ct. at 1548. Because Abramson has pleaded an injury that is both concrete and particularized, he has suffered an injury-in-fact sufficient to confer Article III standing in this case.

In so ruling, the Court rejects any suggestion that Abramson's prolific history of filing TCPA lawsuits distinguishes this case and demonstrates the lack of an injury-in-fact. *See* ECF

No. 24, at 5-7 & Ex. B (listing 28 TCPA lawsuits filed by Abramson).  As another judge in this District recently ruled in denying a similar motion to dismiss a TCPA case filed by Abramson, Abramson's "pursuit of his rights under the Act in other lawsuits" does not "negate the existence" of an otherwise concrete and particularized injury-in-fact based on intrusion upon the litigant's rights to privacy and seclusion.  *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 WL 6236370, at * 3 (W.D. Pa. Oct. 24, 2016) (Kearney, J.) *see also Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195-96 (M.D. Tenn. 2017) (rejecting the idea that, "by becoming a so-called 'professional plaintiff,' [the plaintiff] has forfeited [his rights to privacy and seclusion] because the calls alleged were not truly unwanted").

Oasis acknowledges the survival of Abramson's TCPA claims in other lawsuits but states that the facts of this case are distinguishable because, here, "Abramson purposely engaged with Oasis Energy, only to terminate Oasis Energy's services several days later, with the clear aim of encouraging calls and generating litigation."  (ECF No. 24, at 7 n.7.)  Oasis contends that Abramson "deceptively played along" with Oasis by signing up as a customer for the purpose of identifying Oasis as a defendant and engineering this lawsuit, and, therefore, that Abramson "simply has not alleged the particularized actual injury needed for standing under Article III."  *Id.* at 7.  In support of this argument, Oasis cites the district court's ruling in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) (Gibson, J.), and the Declaration of Hector Laya attached to Oasis's supporting brief.³  (ECF No. 24-1.)

---

³ The Declaration identifies Laya as the Director of Telesales for Spark Energy, Inc. and states that, as such, he is responsible for marketing at Oasis.  Laya Decl. ¶ 2.  He states that he is familiar with Oasis's policies and practices concerning marketing its products and services to potential customers as well as Oasis's business records.  *Id.* ¶ 3.  Among other things, Laya avers that, based upon his review of Oasis's records, the alleged calls were not made using an ATDS; in the March 13 call, Pro-Tel returned a call that Abramson had made to Pro-Tel to confirm an energy efficiency survey appointment; during the March 13 call, Abramson gave his consent to a third-party verification agent

11

Oasis's arguments in this regard are unpersuasive. As an initial matter, it is not dispositive that Abramson may have been motivated by the TCPA's damages provisions to "profit off of the TCPA and punish telemarketers." (ECF No. 24, at 6-7.) As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests simply because such citizens may be motivated to sue by the TCPA's damages provisions. *See, e.g.*, *Cunningham*, 251 F. Supp. 3d at 1195-96 ("The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: 'like statutory compensation for whistle-blowers,' they operate as bounties, increasing the incentives for private enforcement of law.'. . . While these schemes do not eliminate the constitutional requirement of injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury."); *id.* at 1195 ("Nothing in the Constitution . . . requires a plaintiff to be a naïf. Litigation is not college athletics. There is no 'amateurs only' rule.").

The *Stoops* case to which Oasis cites likewise does not support dismissal. In *Stoops*, the court, *at the summary judgment stage after discovery*, dismissed plaintiff's TCPA claim for lack of standing after finding that the plaintiff had purchased the cellular telephones at issue solely for the purpose of receiving automated telemarketing calls. *See id.* at 799-802. Citing the plaintiff's lengthy deposition testimony, the court found that she could not demonstrate an injury-in-fact

---

to have Oasis contact and communicate with Abramson at the contact information included with his enrollment; and Abramson promptly terminated the electrical service he purchased from Oasis effective March 22, 2018. *Id.*¶¶ 5-16. Attached to Laya's Declaration are purported transcripts of the March 13 call and a welcome packet from Oasis to Abramson confirming his purchase of electricity from Oasis. *Id.* Exs. 1-3.

because she admitted "that her only purpose in using her cell phones is to file TCPA lawsuits," and, therefore, "the calls are not 'a nuisance and an invasion of privacy.'" *Id.* at 800. Even if this Court were to accept the reasoning set forth in *Stoops*, the case is factually distinguishable from the instant case. Importantly, there is no evidence in this case suggesting that Abramson obtained the phone number at issue solely for TCPA purposes. To the contrary, in an Affidavit attached to his opposition brief, Abramson avers that he has held the phone number called in connection with this lawsuit for approximately 28 years and that he does not purchase, own, or use telephones for the sole purpose of bringing TCPA lawsuits.[4] (ECF No. 26-1 ¶¶ 2-4.)

Laya's Declaration also is not dispositive. Again, even if true, the fact that Abramson may have posed as an interested consumer does not, in itself, negate standing in private TCPA lawsuits. *See, e.g.*, *Cunningham*, 251 F. Supp. 3d at 1194-95 (finding injury-in-fact even though plaintiff admitted accepting telemarketing call in order to identify the party placing the call and cultivate a TCPA claim); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D. W. Va. 2017) ("While [defendant] is understandably frustrated by [plaintiff's] efficacy, she is doing exactly what Congress intended – enforcing the law."); *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014). Moreover, and in any event, most of Laya's averments,

---

[4] As Abramson notes in his brief, most courts interpreting *Stoops* have done so narrowly and have not extended its holding to cases, such as this case, where the phone line at issue was not procured solely to receive telemarketing calls. *See, e.g.*, *Morris v. Unitedhealthcare Ins. Co.*, Civil Action, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016) (Defendant "proffered no evidence that [972-xxx-xxxx] is a residential telephone number Plaintiff maintains purely for the purpose of filing TCPA lawsuits as in . . . *Stoops* or described facts sufficiently similar to such cases."), *report and recommendation adopted* 2016 WL 7104901 (E.D. Tex. Dec. 6, 2016); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1139 (D. Minn. 2017) ("Here, by contrast [to *Stoops*], Greenley attests that he did not purchase the cellular telephone that [defendant] contacted for the sole purpose of initiating TCPA litigation."); *Sandusky Wellness Ctr., LLC v. Med Tox Scientific, Inc.*, 250 F. Supp. 3d 354, 358 (D. Minn. 2017) (same); *Evans v. Nat'l Auto Div., LLC*, Civ. No. 15-8714, 2016 WL 4770033, at *3 (D.N.J. Sep. 13, 2016) ("*Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits.").

including whether Abramson initiated the contact with Oasis and/or the phone calls at issue were made with an ATDS, involve factual issues also germane to the merits of Abramson's claims. The Court of Appeals for the Third Circuit has cautioned district courts against improper consideration of a merits question under the guise of a 12(b)(1) factual challenge. *See Davis*, 824 F.3d at 349 ("We have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits."). The Court explained that:

> Caution is necessary because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1). First, proceeding under Rule 12(b)(1) inverts the burden of persuasion. When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim. But under Rule 12(b)(1), the plaintiff must prove the court has subject matter jurisdiction. The two rules also treat the complaint's factual allegations very differently. Unlike Rule 12(b)(6), under which a defendant cannot contest the plaintiff's factual allegations, Rule 12(b)(1) allows a defendant to attack the allegations in the complaint and submit contrary evidence in its effort to show that the court lacks jurisdiction. Thus, improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff.

*Id.* at 348-49 (internal citations omitted). Accordingly, "when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* at 350 (quoting *Mortensen*, 549 F.2d at 892). "In light of its limited protections for plaintiffs, Rule 12(b)(1) must not be expanded beyond its proper purpose," and "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.* at 349-50. Here, to the extent Oasis raises merits-

related defects in support of its 12(b)(1) factual challenge to jurisdiction, these defects do not fall into the narrow range of categories for which early dismissal is appropriate.[5]

In short, the First Amended Complaint alleges that Abramson received multiple unsolicited automated communications from Oasis and that such communications violated his substantive right, established by the TCPA, to be free from the invasion of privacy and intrusion upon seclusion caused by unsolicited automated communications. This injury is neither hypothetical nor uncertain, and it demonstrates a harm or, at a minimum, a material risk of harm that is not merely a procedural violation. *See Greenley*, 271 F. Supp. 3d at 1139. Because Abramson has asserted an injury-in-fact that is both concrete and particularized, Oasis's 12(b)(1) Motion to Dismiss for lack of standing on this basis will be denied.

### 3. Failure to State a Claim

Oasis argues that, even if Abramson has established Article III standing sufficient to invoke this Court's subject-matter jurisdiction, his claim would fail under Rule 12(b)(6) because he has not alleged a violation of the TCPA. (ECF No. 24, at 7-10.) Specifically, Oasis contends that the First Amended Complaint fails to plausibly allege that the telephone calls at issue were made using an ATDS and/or were made without Abramson's consent. *Id.* In support of this argument, Oasis relies primarily on its own assertions in this regard set forth in the Laya Declaration. In so doing, however, Oasis neglects the standard applicable to a Rule 12(b)(6) challenge – *i.e.*, that the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[5] As noted above, the primary case upon which Oasis relies in support of its 12(b)(1) motion, *Stoops*, itself was decided on a post-discovery motion for summary judgment and, thus, does not support early dismissal in this case.

may be entitled to relief." *Eid*, 740 F.3d at 122.

Here, the First Amended Complaint directly asserts that on March 13 and March 17, 2018, Abramson received unsolicited phone calls on his cell phone from Oasis and/or Pro-Tel on behalf of Oasis using an ATDS[6] as defined by the TCPA. (ECF No. 18 ¶¶ 15-18, 24-25, 27-33, 38, 41-44, 61-64.) The pleading further avers that Oasis did not have Abramson's prior consent to make these calls. *Id.* ¶¶ 21, 36, 40, 47-50. The First Amended Complaint alleges that Abramson and the other call recipients were harmed by these calls. *Id.* ¶¶ 51-52.

These and the other allegations set forth in the First Amended Complaint more than sufficiently assert a plausible claim under the TCPA. Oasis's reliance on the Laya Declaration and other disputed facts is misplaced in the context of a 12(b)(6) motion to dismiss, and cannot support dismissal at this stage of the proceedings.

## D. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss the First Amended Complaint filed by Oasis (ECF No. 23) be denied.[7]

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of

---

[6] In particular, Abramson alleges that both the March 13 and the March 17 telemarketing calls began with a distinctive pause after he answered and gave his greeting, indicating the use of a "predictive dialer." *Id.* ¶¶ 17-18, 31, 42-43. The First Amended Complaint also cites FCC authority stating that a predictive dialer constitutes an ATDS and is subject to the TCPA's restrictions on the use of autodialers. *Id.* ¶¶ 17-18 (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 (2008)); *see also In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014 (2003).

[7] Nothing in Oasis's Reply Brief changes this conclusion. (ECF No. 27.) Most of the Reply Brief reiterates the argument that there can be no injury for invasion of privacy here because Abramson himself initiated the call. *Id.* at 1-4. As set forth herein, however, Abramson flatly denies ever making the call that Oasis/Pro-Tel purports to have returned. *See* ECF No. 18 ¶ 35; *see also* ECF No. 26-1 ¶ 7 (Abramson Affidavit stating he has received telemarketing calls claiming to be returning a missed call that did not occur). For the reasons previously discussed, the Court declines to decide these merits-infused factual questions at this early stage of the proceedings especially where Oasis's

service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated:   July 31, 2018

BY THE COURT:

  s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:     All Counsel of Record
        *Via Electronic Mail*

---

"facts" primarily come from a single Declaration of a non-employee and purported transcript of the March 13 call, the authenticity and veracity of which Abramson has not been able to test or contest through the discovery process.  *See Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 272-73 (3d Cir. 2016) (reaffirming that "it is only the 'unusual' case that will properly be dismissed under 12(b)(1) 'when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks.'" (quoting *Davis*, 824 F.3d at 348-49)).